# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

KEN GRANT and CARYL GRANT, as
individuals and as husband and wife,

       Plaintiffs,

vs.

                                     No. CIV 03-0931 MV/RHS

CITY OF RIO RANCHO; Planning and
Zoning Chairman; ART CORSIE, also,
Director of City Development; Individually,
and in his capacity as Officer of the City of
Rio Rancho,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Motion to Dismiss **[Doc. Nos. 6, 7]**, filed November 14, 2003.  The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that the motion is well taken and will be **GRANTED**.

## PROCEDURAL BACKGROUND

On August 11, 2003, Caryl and Ken Grant ("Plaintiffs") filed a Complaint in this Court asserting federal and state causes of action arising from a 1993 land transaction and settlement agreement with the City of Rio Rancho.  The Complaint named the City of Rio Rancho, as well as Art Corsie in his individual capacity and in his capacity as an City of Rio Rancho officer. Plaintiffs seek compensatory damages for their economic and non-economic losses against both the City of Rio Rancho and Art Corsie (hereinafter "Defendants"). Plaintiffs also seek punitive damages from Defendant Art Corsie.

On February 3, 2004, Plaintiffs filed a Motion for Permission to File a Supplemental

Complaint **[Doc. No. 15]**.  This motion was based on information Plaintiffs acquired from Robert and Kathleen Fucile after the original Complaint had been filed.  This Court denied Plaintiffs' motion because they did not attach a copy of their proposed amendment to the motion **[Doc. No. 42]**.  Because Plaintiffs did not properly file their amended complaint, the Fucile affidavit and the allegations of fraud as they relate to Plaintiffs' constitutional claims will not be considered by the Court as part of the Complaint.

## FACTUAL BACKGROUND

In 1993, Plaintiffs and Defendants settled several pending actions concerning five lots of commercial property owned by Plaintiffs on Northern Boulevard in the City of Rio Rancho ("Northern Property").  The "Release and Exchange Agreement" mandated that the City of Rio Rancho pay Plaintiffs $300,000 and deed them property facing Unser Boulevard ("Unser Property"), in exchange for Plaintiffs' Northern Property and in full consideration of all damages to Plaintiffs arising out of a zoning dispute between the parties.  In the Release and Exchange Agreement, the parties agreed, *inter alia*, that:  (1) Plaintiffs should be granted a temporary right of egress and ingress adjacent to the property granted by the city; (2) Unser Property "shall not be subject to any eminent domain proceeding or any other action by the city which would have the effect of reducing the size of the parcel to an area insufficient to permit commercial development or use"; (3) work on the arroyo located next to the Unser Property and owned by the City of Rio Rancho would not be conducted in such a manner as to destroy ingress or egress to Plaintiffs' property; and (4) in light of a construction project near Unser Property, Plaintiffs would maintain access from Commercial Drive.

Plaintiffs also contend that under the terms of the agreement and the intent of the parties,

the Unser Property was to be of equal or greater value than Northern Property and the property

was to be suitable in all ways to allow Plaintiffs to operate a commercial business on the site or

sell the property to another business owner.[1]   Plaintiffs and Defendants also signed a "Full

Release and Settlement Agreement" in 1994 -- the Plaintiffs contend as a result of threat, duress,

and coercion.  This Full Release clarified the size of the parcel of land conveyed and specifically

released Defendants from any further liability as a result of the 1993 Agreement.

In their Complaint, Plaintiffs argue that they fully complied with the Settlement and

Exchange Agreement terms by deeding the Northern Property to the City of Rio Rancho.  They

contend, however, that Defendants have not complied with the terms of the 1993 and 1994

agreements and have rendered Unser Property valueless by failing to provide marketable title;

making unreasonable demands relating to the property; failing to ensure egress and ingress;

imposing an "illegal" paving requirement on the property; coercing Plaintiffs to sell portions of the

property to the City of Rio Rancho by threatening eminent domain; and interfering with Plaintiffs'

prospective sale of the property to a qualified buyer.

Specifically, Plaintiffs make the following claims:  (1) breach of contract, based on

Defendants failure to fulfill terms of the Settlement Agreement; (2) bad faith breach of the

covenant of good faith and fair dealing; (3) deprivation of property without procedural or

substantive due process of law; and (4) municipal liability for negligent hiring, training,

supervision, and retention.  Defendants claim that Defendant Corsie is entitled to qualified

immunity in his individual capacity.

---

[1] There is no reference to such terms in the four corners of the Release and Exchange
Agreement.

-3-

## STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides in relevant part that "failure to state a claim upon which relief can be granted" is a defense to a claim for relief in any pleading. Fed. R. Civ. P. 12(b)(6). The Court may not dismiss a cause of action under Rule 12(b)(6) for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts supporting his or her claim that would entitle him or her to relief. *See, e.g.*, *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249-50 (1989). When considering a motion to dismiss, the Court must assume as true all well-pleaded facts, and must draw all reasonable inferences in favor of the plaintiff. *See Housing Auth. of the Kaw Tribe v. City of Ponca City,* 952 F.2d 1183, 1187 (10th Cir. 1991). The issue in reviewing the sufficiency of a complaint "is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claim." *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). "[G]ranting a motion to dismiss is 'a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice.'" *Cayman Exploration Corp. v. United Gas Pipe Line Co.,* 873 F.2d 1357, 1359 (10th Cir. 1989) (quoting *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir.1986)).[2] These deferential rules, however, do not allow a court to assume that a plaintiff "can prove facts that [the plaintiff] has not alleged or that the defendants have violated the...laws in ways that [the plaintiff has not] alleged." *See Associated Gen. Contractors, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

---

[2] The same standard that applies to a motion to dismiss under rule 12(b)(6) also applies to a motion for judgment on the pleadings under Rule 12(c). *See, e.g., Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 528 (10th Cir. 1992).

The standard for analyzing a motion to dismiss shifts slightly if a defendant raises qualified immunity as a defense to a suit under 42 U.S.C. § 1983.  Qualified immunity bars § 1983 suits against defendants in their individual--but not official--capacities.  *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 167 (1985) (citations omitted).  The qualified immunity defense was created to shield public officials "from undue interference with their duties and from potentially disabling threats of liability."  *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982).  It provides defendants not only with immunity from liability but also with immunity from suit.  *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  It grants defendants the "right . . . . to avoid standing trial . . . [and] to avoid the burdens of such pretrial matters as discovery."  *Holland v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001) (citation and internal quotations omitted), *cert. denied*, 535 U.S. 1056 (2002).  As a result, the Tenth Circuit "'repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'"  *Id.* at 1185 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curium)); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Although "summary judgment provides the typical vehicle for asserting a qualified immunity defense," the defense can be raised on a motion to dismiss.  The Tenth Circuit has held, however, that "[a]sserting a qualified immunity defense via a Rule 12(b)(6) motion . . . subjects the defendant to a more challenging standard of review than would apply on summary judgment," because a "'motion to dismiss for failure to state a claim is viewed with disfavor, and is rarely granted.'"  *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004) (citation omitted).

Once a defendant raises the defense of qualified immunity on a motion to dismiss, a plaintiff must (1) assert facts which, if true, would constitute a violation of a constitutional right,

and (2) demonstrate that the "right was clearly established so that [a] reasonable official[] in [the] defendant['s] situation would have understood [his or her] conduct violated that right." *Leibson v. New Mexico Corrections Dep't*, 73 F.3d 274, 276 (10th Cir. 1996); *see also, e.g.*, *Saucier*, 533 U.S. at 201-02.  If a plaintiff fails to satisfy this two-part burden, a court must grant the defendant qualified immunity.  *See Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).  A court's review of a qualified immunity defense raised in a motion to dismiss is limited to the pleadings. *See Gagan v. Norton*, 35 F.3d 1473, 1475 (10th Cir. 1994) (citation omitted), *cert. denied*, 513 U.S. 1183 (1995).

## DISCUSSION

Defendants move to dismiss Plaintiffs' Complaint on several grounds.  First, Defendants argue that the statute of limitations bars Plaintiffs' 42 U.S.C. § 1983 claims.  Second, if the statute of limitations does not bar the claims, Defendants argue that Plaintiffs have failed to state a valid claim for relief under § 1983.  Third, Defendants argue that absent any constitutional violation under § 1983, there is no basis to maintain a failure to train or negligent hiring claim against them. Finally, Defendants argue that if all of the federal claims are dismissed, there is no basis for the Court to exercise jurisdiction over Plaintiffs' state law claims.  The Court will address each of these arguments in turn.

## I.    Does the Statute of Limitations Bar Plaintiff's § 1983 Claims?

In general, to establish a constitutional claim under § 1983, a plaintiff must prove four elements: "(1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a 'person' (4) who acted under color of [law]." *Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2002) (citations

omitted). Even if a viable constitutional claim exists, however, a number of legal doctrines may preclude recovery.

First, a § 1983 claim is subject to a statute of limitations. Because Congress did not specify a statute of limitations on § 1983 claims, "state law determines the appropriate statute of limitations and accompanying tolling provisions." *Fratus v. Deland*, 49 F.3d 673, 675 (10th Cir. 1995). The Supreme Court has mandated that under New Mexico law, the three-year statute of limitations for injuries to the person is the appropriate limitations period for actions arising under § 1983. *See Wilson v. Garcia*, 471 U.S. 261, 276 (1985). Section 1983 claims accrue when the plaintiff knows or has reason to know of the injury that is the basis of the action. *See Smith v. City of Enid*, 149 F.3d 1151, 1154 (10th Cir. 1998); *see also Blumberg v. HCA Management Co.*, 848 F.2d 642, 645 (5th Cir. 1988) (a civil rights action accrues when "facts that would support a cause of action are or should be apparent" to the plaintiff). Federal law governs the time of accrual of § 1983 claims. *See City of Enid*, 149 F.3d at 1154.

In the instant case, Plaintiffs allege various instances of wrongful conduct by Defendants commencing after the parties executed the Release and Exchange Agreement in 1993 and continuing to the present. Based on these facts, the statute of limitations would have expired at different times depending upon when the wrongful acts alleged by Plaintiffs occurred. In their Complaint, Plaintiffs allege that they were not, and should not have been, aware that their civil rights were being violated until they were unable to sell Unser Property in August 2002 because of Defendants' imposition of the "illegal paving requirement."[3] Furthermore, Plaintiffs argue that

---

[3] Unser Property was not deeded to Plaintiffs until September 12, 2003, after the filing of the Complaint in this case.

the totality of Defendants' actions from 1993 to the present constitutes a continuing civil rights violation.  Defendants, on the other hand, argue that nearly all of the conduct Plaintiffs allege took place substantially before August 11, 2000, three years before Plaintiffs filed their Complaint and thus the threshold date for the statute of limitations.  Defendants further argue that because the Agreement was signed in 1994, "[i]f the City failed to comply with the Agreement and provide marketable title, plaintiffs knew or reasonably should have known of this within seven years following the execution of the Agreement."   Memorandum in Support of Defendants' Motion to Dismiss at 5.

The accrual of Plaintiffs' § 1983 claims in this case is difficult to pinpoint, because of the nature of relations between Plaintiffs and Defendants between 1993 and the present.  Taking Plaintiffs allegations as true, however, as this Court must, Defendants engaged in dishonest and deceitful activity immediately following the execution of the Release and Exchange Agreement, which continued to the point of the filing of the Complaint. It is reasonable, therefore, that Plaintiffs may not have been aware that their federal constitutional rights were being violated until they attempted to sell their land in 2002 and were not able to do so.[4]

Furthermore, even if Plaintiffs action did not accrue within the statutory time limit, there are certain doctrines that will toll the statute of limitations.  One is the "continuing violation" theory.  The Tenth Circuit has never specifically held whether the continuing violation theory applies to claims brought under § 1983.  *See Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir.

---

[4] Plaintiffs may well have had enough information prior to the statute of limitations period to file state law claims in tort or contract; however, it does not follow that they reasonably knew there was a basis for a civil rights action.

1994).[5]  Several other circuits, however, have recognized that the continuing violation theory applies to § 1983 and will serve to save claims from a statute of limitations defense.  *See Clark v. City of Richmond*, 318 F.3d 764, 767-66 (7th Cir. 2003) (recognizing that the continuing violation doctrine can apply to § 1983 claims, but declining to apply it where the plaintiff was only able to allege one discrete incident of unlawful conduct); *Cowell v. Palmer Township*, 263 F.3d 286, 292 (3rd Cir. 2001) (two-year statute of limitations does not bar a § 1983 claim based on remote conduct if there has been a continuing violation such that defendant's conduct is "more than the occurrence of isolated or sporadic acts"); *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001) (the continuing violation theory applies to § 1983 actions, allowing a plaintiff to seek relief for events outside of the limitations period); *Gilbert v. City of Cambridge*, 932 F.2d 51, 58-59 (1st Cir. 1991) (recognizing continuing violation theory to statute of limitations defense in a § 1983 case); *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 510-11 (6th Cir. 1991) (applying continuing violation theory to plaintiff's § 1983 claims of deprivation of right to racially non-discriminatory employment where plaintiff alleged a "continuing pattern" of discriminatory conduct).

Similarly, in other contexts, the continuing violation theory is applicable and depends on whether the "alleged discriminatory acts are sufficiently related to constitute a continuing violation or whether such acts are discrete acts which must be regarded as individual violations."

_____

[5] Defendants cite *Rosewood Servs., Inc. v. Sunflower Diversified Servs., Inc.*, 2003 WL 2209087 (D. Kan. 2003) (unpublished disposition), for the proposition that "[t]he continuing violation theory is of no help to plaintiffs because the Tenth Circuit has not recognized that theory under § 1983 and is unlikely to do so."  What the court in *Rosewood* made clear, however, is that the Tenth Circuit "has not decided the precise issue of whether the continuing violation doctrine applies to § 1983 cases." *Id.* at *14.  Although the District Court of Kansas in *Rosewood* did not apply the continuing violation theory to the plaintiff's Section 1983 claim, *see id.*, that decision has no binding authority on this Court.

*Richardson v. America Online, Inc.*, 337 F.3d 1179, 1184 (10th Cir. 2003).  In Title VII cases, for example, the court applies a three-part inquiry to determine whether there has been a continuing violation:  "'(i) subject matter--whether the violations constitute the same type of discrimination; (ii) frequency; and (iii) permanence--whether the nature of the violations should trigger an employee's awareness of the need to assert her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.'"  *Id.* (citations omitted).  In the tort arena, the "continuing wrong" doctrine also will toll the statute of limitations.  "Under [this] doctrine, ... 'where a tort involves a continuing or repeated injury, the cause of action accrues at, and the limitations begin to run from, the date of the last injury.'"  *Tiberi v. Cigna Corp.*, 89 F.3d 1423, 1430-31 (10th Cir. 1996); *see also Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002) (continuing wrong doctrine "applies when there is 'no single incident' that can 'fairly or realistically be identified as the cause of significant harm'") (citing *Page v. United States*, 729 F.2d 818, 821-22 (D.C. Cir. 1984)).

As described herein, Plaintiffs' Complaint alleges conduct beginning in 1993 and continuing through the present.  Defendants argue that because the "continuing violation" theory as applied to § 1983 claims has not been explicitly recognized by the Tenth Circuit, it should not apply to this case.  They offer no substantive defense of this proposition.  For purposes of a motion to dismiss, the court must construe all inferences in favor of Plaintiff and only dismiss if it appears beyond a doubt that the Plaintiff can prove no set of facts in support of his claims that would entitle him to relief.  *See Housing Auth. of the Kaw Tribe*, 952 F.2d at 1187.  Under this generous standard, Plaintiffs' claims are not barred by the statute of limitations for three reasons.  First, it is conceivable that Plaintiffs' § 1983 claims did not begin to accrue until they learned that they would not be able to sell the Unser Property as a result of Defendants' imposition of the

paving requirement.  Second, even if Plaintiffs' claims accrued outside of the statute of

limitations, the continuing violation theory should apply.  The injuries they allege are sufficiently

related such as to constitute a continuing violation, rather than being discrete acts that must be

regarded as individual violations.  As an example, Plaintiffs did not even receive marketable title

to the property until after the filing of their Complaint, which can only be considered a continuing

violation of the Settlement Agreement and Plaintiffs' interests in Unser Property. Third, the

paving requirement – arguably the subject of the constitutional claims – did not accrue until 2002.

As such, it is still within the three-year statute of limitations.

**II.      Do Plaintiffs State a Claim for Relief under 42 U.S.C. § 1983?**

Plaintiffs make two claims under 42 U.S.C. § 1983:  (1) Defendants deprived them of their

property without procedural due process; and (2) Defendants deprived them of their property

without substantive due process. Plaintiffs also attach a "failure to train" claim to the other

constitutional violations.

Defendants first contend that Plaintiffs' procedural due process claim is not ripe for

adjudication, or, alternatively, is barred by the availability of adequate state remedies.  Second,

Defendants contend that Plaintiffs' substantive due process claims cannot go forward because

such a claim is not available where the cause of action is covered by a more definite provision of

the Constitution and, even if the claim can go forward, Plaintiffs' allegations do not amount to a

deprivation of substantive due process.

The Due Process Clause of the Fourteenth Amendment provides:  "[N]o state shall

deprive any person of life, liberty, property, without due process of law."  This clause permits

three types of actions.  First, the Clause incorporates many of the specific protections defined in

the Bill of Rights, and therefore permits a plaintiff to bring suit for state officials' violation of

enumerated constitutional rights.  *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990).  Second, the

Due Process Clause contains a substantive component that bars certain arbitrary governmental

actions.  *Daniels v. Williams*, 474 U.S. 327, 331 (1986).  Finally, the clause includes a guarantee

of fair procedure.  A procedural due process violation occurs where the state violates the

Constitution not in the action it takes, but in its failure to provide sufficient process to guarantee

that an individual is treated fairly.  *See, e.g., Fuentes v. Shevin*, 407 U.S. 67, 92 (1972).  The

distinction between substantive and procedural due process claims is important.  Courts have long

found that "[p]rocedural due process ensures the state will not deprive a party of property without

engaging fair procedures to reach a decision, while substantive due process ensures the state will

not deprive a party of property for an arbitrary reason regardless of the procedures used to reach

that decision."  *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000)

(citations omitted).

> ### A.    Plaintiffs' Procedural Due Process Claim

Plaintiffs list several of Defendants' acts which they believe invoke the protections of

procedural due process.  In attempting to describe the property interests allegedly deprived by

Defendants, Plaintiffs discuss the following acts in their Complaint:  (1)  Defendants' failure to

grant marketable title to Plaintiffs and the devaluing of the property based on Defendants' breach

of the Settlement Agreement, Complaint at ¶ 20; (2) Defendants' actions in taking back a portion

of the Unser Property for ditch and road purposes under the threat of eminent domain, Complaint

at ¶¶ 8, 20(B); (3)  Defendants' imposition of an "illegal and unauthorized" paving requirement

that prevented Plaintiffs from selling the property to a "willing and able buyer," Complaint at ¶

20(D); and (4) Loss of egress and ingress, Complaint at ¶ 11, 20(E).  Finally, Plaintiffs allege that

Defendants' actions in their totality "deprived the Plaintiffs of their property interest in the

commercial, resale, or any other beneficial use of their Unser Property, effectively denying the Grants virtually all beneficial use of their land." Complaint at ¶ 22.

It is undisputed that deprivation of property without due process gives rise to a claim under Section 1983. *See Gillihan v. Shillinger*, 872 F.2d 935, 939 (10th Cir. 1989). To state a claim for a violation of due process, plaintiff must first establish that it has a protected property interest and, second, that defendants' actions violated that interest. *See Weathers v. West Yuma County Sch. Dist.*, 530 F.2d 1335, 1337 (10th Cir. 1976). The property interest must be "specific and presently enforceable." *Doyle v. Oklahoma Bar Ass'n*, 998 F.2d 1559, 1569 (10th Cir. 1993). A property interest protected by the due process clause results from a legitimate claim of entitlement created and defined by "existing rules or understandings that stem from an independent source such as state law." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). In fact, property or liberty interests attain "constitutional status by virtue of the fact that they have been initially recognized and protected by state law." *Paul v. Davis*, 424 U.S. 693, 710 (1976). Finally, if a plaintiff demonstrates that he has been deprived of a protected property interest, the court must then determine whether the state procedures available for challenging the deprivation satisfy the requirements of due process. *Hudson v. Palmer*, 468 U.S. 517, 531-32 (1984).

1.      *Plaintiffs' Property Interests*

As a preliminary matter, Plaintiffs fail to enumerate what sources create the property interests allegedly deprived by Defendants. The Court, nonetheless, will address each asserted interest. First, the Court finds no protected property interest in the alleged breach of the settlement agreement. *See, e.g., Economic Dev. Corp. of Dade County, Inc. v. Stierheim*, 782 F.2d 952, 954 (11th Cir. 1986) (finding that plaintiff's contract with the county failed to afford it

a constitutionally protected property interest); *Bishop v. Wood*, 426 U.S. 341, 349-50 (1976) (a mere allegation of a breach of a contractual right is not a deprivation of property without constitutional due process).  Second, Plaintiffs have a protected property interest where a state takes property without providing just compensation, however, such a claim is covered by the Fifth Amendment.  *See, e.g., Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985).  Third, Plaintiffs have a protected property interest where a city imposes a zoning ordinance requirement if it does not follow particular procedures to reach the decision.  *See, e.g., Carter v. City of Salina*, 773 F.2d 251, 254 (10th Cir. 1985) ("It is the general rule that zoning ordinances are in derogation of common-law property rights and find their authority through the state police power; accordingly, municipalities and other political subdivisions must scrupulously comply with statutory requirements, including notice and hearing.").  It should be noted that Plaintiffs in the instant case are not challenging a zoning ordinance.

        2.     *Deprivation of Property Interests*

       The Court next examines whether Defendants' alleged actions have "deprived" Plaintiffs of any of the protected interests without due process of law.  In this case, it appears that Plaintiffs were not afforded hearings before Defendants restricted Plaintiffs' property use, seized portions of the land under threat of eminent domain, and imposed a paving requirement on the property.  First, where the state does not have the opportunity to provide a predeprivation remedy, the act of deprivation, for the purpose of procedural due process, is not complete until the state "fails to provide a suitable postdeprivation remedy."  *Hudson*, 468 U.S. at 532, n.12.  Consequently, the Supreme Court has held "that an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is

-14-

available." *Id.* at 533.

On the other hand, the *Gillihan* Court stated that when the deprivation

> is not random and unauthorized, but is pursuant to an affirmatively
> established or *de facto* policy, procedure, or custom, the state has
> the power to control the deprivation and, therefore, generally must,
> in the absence of compelling reasons to the contrary, give the
> plaintiff a predeprivation hearing. In such cases, the availability of
> an adequate state post-deprivation remedy is irrelevant and does
> not bar a § 1983 claim.

872 F.2d at 939-40 (citations omitted). Within this legal framework, the Court now will consider

whether Plaintiffs' procedural due process claims are viable.

a.      Plaintiffs' Takings Claims

Plaintiffs' claims regarding the use and enjoyment of their property, the failure of the City

to provide marketable title, and the seizure of the land under threat of eminent domain essentially

all amount to takings claims.  Plaintiffs' language in the Complaint indicates as much: "[t]he

actions of the Defendants as described herein deprived the Plaintiffs of their property interest in

the commercial, resale, or any other beneficial use of their Unser Property, effectively denying the

Grants virtually all beneficial use of their land."[6]  Complaint at ¶ 20, 22.  Thus, the Court finds

that these claims are more properly covered by the Fifth Amendment.

Defendants argue that to the extent Plaintiffs allege a taking claim, it should be dismissed

as unripe because Plaintiffs have not pursued any of their state remedies.  Plaintiffs, on the other

hand, allege that any state remedy would be inadequate to redress the harm they have suffered.

The Court agrees with Defendants.  "[I]f a State provides an adequate procedure for seeking just

---

[6] Plaintiffs deny that they are asserting a takings claim.  Rather, they state that they are
making a "fraudulent takings" claim.  The Court has found no case law, nor has the Plaintiff
pointed to any case law, to distinguish a takings claim from a "fraudulent takings" claim.

compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Williamson County*, 473 U.S. at 195. Here, the State of New Mexico has provided an adequate posttaking remedy -- an inverse condemnation proceeding -- which Plaintiffs have not utilized. In New Mexico, an inverse condemnation action can compensate a plaintiff for "'the value of property taken by the agency, though no formal exercise of the power of eminent domain has been completed.'" *Public Serv. Co. of New Mexico v. Catron*, 646 P.2d 561, 563, 98 N.M. 134, 136 (N.M. 1982). In addition, property need not be actually taken for a property owner to be compensated under an inverse condemnation action; it is enough if the plaintiff suffers consequential damages. *See id.* Unless and until plaintiffs avail themselves of this remedy in so much as they allege that Defendants have deprived their land of any use or value, Plaintiffs' takings claims will remain unripe. *See Miller v. Campbell County*, 945 F.2d 348, 352 (10th Cir. 1991) (finding that failure to invoke Wyoming inverse condemnation procedure before seeking federal court relief renders case unripe for consideration); *see also Bateman v. City of West Bountiful*, 89 F.3d 704, 706 (10th Cir. 1996) ("whether a claim is ripe for review bears on the court's subject matter jurisdiction under Article III of the Constitution"). Thus, to the extent that Plaintiffs argue a takings claim or a "fraudulent takings" claim, the Court concludes that it is not ripe and therefore the Court lacks jurisdiction to entertain it.

b.    <u>Paving Requirement</u>

Assuming, however, that Plaintiffs allege a distinct procedural due process claim with regard to the "illegal" and "unauthorized" paving requirement,[7] Plaintiffs have not shown that they

---

[7] After closely analyzing Plaintiffs' Complaint, the only claim that may constitute a violation of the due process clause is Defendants' imposition of the paving requirement on Unser

have a property interest, founded in state law, which guarantees them any procedure before the state can impose the paving ordinance on their property.  New Mexico Statute Annotated 1978 § 3-17-1 states in relevant part:

> The governing body of a municipality may adopt ordinances or resolutions not inconsistent with the laws of New Mexico for the purpose of:
>
>> A.  effecting or discharging the powers and duties conferred by law upon the municipality;
>>
>> B.  providing for the safety, preserving the health, promoting the prosperity and improving the morals, order, comfort and convenience of the municipality and its inhabitants[.]

N.M. STAT. ANN. 1978 § 3-17-1.  This section makes no mention of a right to notice and a hearing before a city can impose an ordinance.  The Plaintiffs also have not alleged such a benefit or entitlement provided to them by state law or the 1993 Settlement Agreement.  In fact, the Agreement clearly states:  "We also fully agree to comply with all City of Rio Rancho ordinances, laws and regulations relating to the use of our real property[.]"  Complaint, Exh. B at 9.  Finally, ordinances are not the same as zoning decisions, which require "municipalities and other political subdivisions" to "scrupulously comply with statutory requirements, including notice and hearing" and to provide remedies to citizens if the requirements are not followed.  *City of Salina*, 773 F.2d at 254.

Even if Plaintiffs could establish an entitlement or benefit under state law that applies to the paving ordinance, its mere existence "without further substantive limitation, does not give rise

---

Property.  The Court only considers the paving requirement under the due process clause to the extent that Defendants may have violated Plaintiffs' rights to fair procedure.  To the extent Plaintiffs allege that the imposition of the paving requirement deprived them of the opportunity to sell and make beneficial use of their property, such claim is a takings claim and cannot be considered by the court until Plaintiffs have pursued inverse condemnation proceedings.  *See* Part II, *supra*.

to an independent substantive [property] interest protected by the fourteenth amendment."

*Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence*, 927 F.2d 1111, 1117 (10th Cir. 1991); *see also Cain v. Larson*, 879 F.2d 1424, 1426 (7th Cir. 1989) ("In order to give rise to a constitutionally protected property interest, a statute or ordinance must go beyond mere procedural guarantees to provide some substantive criteria limiting the state's discretion.").  In this case, Plaintiffs point to no criteria or procedure set forth in state law that limits Defendant Corsie's discretion in imposing the paving ordinance.  For this reason, too, the Court finds that Plaintiffs do not have a protected property interest.

Assuming, however, that Plaintiffs have a protected property interest, Plaintiffs have not shown that Defendants deprived them of that interest.  Plaintiffs fail to allege with specificity how the paving ordinance was "nonexistent," "unauthorized," "illegal," or contrary to state law. Plaintiffs fail to allege the manner in which Defendants sought to impose the paving requirement on the Unser Property.  Plaintiffs fail to allege that Defendants made any final decision as to how the paving ordinance would apply to their property.  Plaintiffs fail to allege that they petitioned the Defendant Corsie or the Planning Board for a variance to challenge the ordinance as it applied to their property and that Defendants denied the request.  The Court need not assume that Plaintiffs can prove these unalleged but essential facts.  *See Associated Gen. Contractors, Inc.*, 459 U.S. at 519.  Without these facts, Plaintiffs have not stated a claim that Defendants deprived them of their property without due process of law.

Finally, even assuming that Plaintiffs could show that Defendants deprived them of a protected interest, Plaintiffs have not shown that a state postdeprivation remedy is inadequate. Where the state does not have the opportunity to provide any predeprivation remedy, the act of deprivation, for the purpose of procedural due process, is not complete until the state "fails to

-18-

provide a suitable postdeprivation remedy." *Hudson*, 468 U.S. at 532, n.12. Consequently, the

Supreme Court has held "that an unauthorized intentional deprivation of property by a state

employee does not constitute a violation of the procedural requirements of the Due Process

Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is

available." *Id*. at 533. Furthermore, a state postdeprivation remedy need not provide all the relief

that might be available under § 1983. *See id*. at 544. It is clear from the Complaint that Plaintiffs

have not sought a breach of contract claim or tort conversion claim in state court. Furthermore, it

is clear that the Plaintiffs did not file a state action against the City to challenge the ordinance

itself as violative of state law or Plaintiffs' rights.

      In 1990, however, the Supreme Court held in *Zinermon v. Burch* that the existence of

state remedies will not preclude procedural due process claims where (1) the risk of the

deprivation complained of was foreseeable to the State, (2) the State might have reduced that risk

either through additional predeprivation safeguards or by limiting the defendants' discretion in

implementing established procedures, and (3) the defendants are authorized by the State to

implement the requisite safeguards. 494 U.S. at 989-90.

      In the instant case, while it is true that the risk of an arbitrary deprivation might have been

reduced through additional predeprivation safeguards such as a hearing, the harder question,

under *Zinermon*, is whether the risk of the allegedly arbitrary deprivation by Defendant Corsie

was foreseeable as opposed to a random and unauthorized act. Plaintiffs' Complaint in large part

answers this question. Plaintiffs make no claim that the due process violation was caused by an

established state procedure or policy. To the contrary, Plaintiffs specifically allege that Defendant

Corsie acted outside the scope of his authority to impose the "illegal" and "unauthorized" paving

requirement. The Court thus concludes that this was a random and arbitrary act and that

*Zinermon* should not apply.  Plaintiffs, then, are only entitled to relief if there are no adequate post-deprivation remedies.  As stated herein, adequate remedies were available to Plaintiffs.

For these reasons, the Court concludes that Plaintiffs' procedural due process claims will be dismissed for failure to state a claim, or alternatively, as unripe.

**B.      Substantive Due Process**

Plaintiffs also allege a substantive due process violation based on Defendants' "illegal, arbitrary, and capricious" actions, all of which "were undertaken in bad faith, maliciously, and without just cause, amounting to conduct which shock (sic) the conscience."  Complaint at ¶ 26.

The Tenth Circuit has not made clear "what interest is required to trigger substantive due process guarantees." *Archuleta v. Colorado Dept. of Insts.*, 936 F.2d 483, 489 (10th Cir. 1991) (citing *City of Lawrence*, 927 F.2d at 1119).  The Supreme Court itself has not made clear what property interests are entitled to substantive due process protection.  *See Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 229 (1985) (Powell, J., concurring).  The Court has, however, provided some guidance:  "While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, substantive due process rights are created only by the Constitution." *Id.* (citation omitted); *see also Mangels v. Pena*, 789 F.2d 836, 839 (10th Cir. 1986) (substantive due process rights "are founded not upon state provisions but upon deeply rooted notions of fundamental personal interests derived from the Constitution.").  In *Ewing*, Justice Powell criticized the student's interest in "continued enrollment" in an educational program as "essentially a state-law contract right."  474 U.S. at 229.  He also noted that it bore "little resemblance to the fundamental interests that previously have been as implicitly protected by the Constitution."  *Id.* at 229-30.

The Third Circuit recently supported this position:

> "[N]ot all property interests worthy of procedural due process protections are protected by the concept of substantive due process." Rather to state a substantive due process claim, "a plaintiff must have been deprived of a *particular quality* of property interest." ... [W]hether a certain property interest embodies this "particular quality" is not determined by reference to state law, but rather depends on whether that interest is "fundamental" under the United States Constitution.

*Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 140 (3rd Cir. 2000) (citations omitted; emphasis in original); *accord Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339, 1351 (6th Cir. 1992).

As a preliminary matter, Plaintiffs have failed to allege in their Complaint a distinct interest protected by the substantive due process clause. The interests allegedly deprived by Plaintiffs, assuming they are actually interests held by Plaintiffs, are all interests created by state law that do not invoke the fundamental substantive protections of the Constitution. It is not enough to allege a substantive due process interest by simply concluding that Defendants' actions were arbitrary and capricious, amounting to behavior which "shocks the conscience." And while the concept of substantive due process is not fixed or final, *see Rochin v. California*, 342 U.S. 165, 170 (1952), it is generally accorded to matters relating to marriage, family, procreation, and the right to bodily integrity. *See Albright v. Oliver*, 510 U.S. 266, 272 (1994). Put another way, it protects only those interests that are "implicit in the concept of ordered liberty." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (citation omitted).

Furthermore, redress for a substantive due process violation is disfavored where the claim is coextensive with another, more cognizable constitutional claim. In *Nestor Colon Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32, 45 (1st Cir. 1992), the First Circuit found that, "[s]ubstantive due process, as a theory for constitutional redress, has in the past fifty years been disfavored, in part because of its virtually standardless reach." *See also County of Sacramento v.*

*Lewis*, 523 U.S. 833, 842 (1998) (The Supreme Court has "always been reluctant to expand the concept of substantive due process."). The court in *Custodio* found that to the extent that the plaintiff's substantive due process claim was coextensive with a First Amendment claim, there was "no need to enter the uncharted thicket of substantive due process." 946 F.2d at 46.

Thus, in the instant case, to the extent that Plaintiffs have alleged what amount to takings claims, it is inappropriate for the Court to consider them under the substantive due process clause as they are specifically covered by the Fifth Amendment. As to Plaintiffs' due process claim regarding the paving requirement, however, Plaintiffs seem to allege a distinct violation from unfair procedure, which is covered by procedural due process. They contend that the defendants exercised their power "without any reasonable justification in the service of a legitimate governmental objective." *Lewis*, 523 U.S. at 846 (citing *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). This allegation, however, is not enough to make out a protected interest under the substantive due process clause.

Even if a party can make out an interest sufficient to trigger substantive due process protection that is not "covered" more specifically by another constitutional amendment, the Tenth Circuit has required a plaintiff to demonstrate that the defendant's conduct was arbitrary, lacking a rational basis, or shocking to the conscience of federal judges to state a claim. *Butler v. Rio Rancho Pub. Schs. Bd. of Educ.*, 341 F.3d 1197, 1200-01 (10th Cir. 2003). Substantive due process will only extend to "government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill-advised." *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2nd Cir. 1994) (citations omitted). In sum, substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority. *See, e.g., Lewis*, 523 U.S. at 846 ("only

the most egregious official conduct can be said to be 'arbitrary' in the constitutional sense");

*Abeyta v. Chama Valley Indep. Sch. Dist.*, 77 F.3d 1253, 1256-57 (10th Cir. 1996) (describing

the acts necessary to constitute a substantive due process violation as the "brutal and inhumane

abuse of official power literally shocking to the conscience").

For example, "[a]rbitrary conduct that might violate zoning regulations as a matter of state

law is not sufficient to demonstrate conduct so outrageously arbitrary as to constitute a gross

abuse of governmental authority that will offend the substantive component of the Due Process

Clause." *Natale v. Town of Ridgefield*, 170 F.3d 258, 262 (2nd Cir. 1999).  The First Circuit

similarly has found that "rejections of development projects and refusals to issue building permits

do not ordinarily implicate substantive due process"... "[e]ven where state officials have allegedly

violated state law or administrative procedures."  *PFZ Properties, Inc. v. Rodriguez*, 928 F.2d 28,

31 (1st Cir. 1991) (citations omitted).

Given these guiding legal principles, the Court finds that Plaintiffs cannot state a claim for

a substantive due process violation.  First, Plaintiffs have not alleged an interest "implicit in the

concept of ordered liberty" such that substantive due process protection is warranted.  Second,

even if Plaintiffs state a protected interest, none of Plaintiffs' allegations describe conduct that is

so arbitrary and capricious as to shock the conscience.  Plaintiffs' allegations describe a long,

bitter dispute with Defendants over land, marketable title, contracts, and unauthorized ordinances.

Sadly, Plaintiffs were unable to sell their land to a qualified buyer as a result of Defendants'

actions.  This conduct, while unfortunate, does not "shock the conscience" in a constitutional

sense.  *See Rochin*, 342 U.S. at 165 (conduct shocked the conscience where police officers

involuntarily pumped an individual's stomach to obtain evidence); *City of Cuyahoga Falls, Ohio

v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 198-99 (2003) (conduct did not shock the

conscience where city refused to issue new building permits pending the resolution of a

referendum, even though the city had already approved a developer's site plan and building

permits).   Defendants' motion to dismiss Plaintiffs' substantive due process claim will be granted.

### C.      Failure to Train Claim

Plaintiffs also allege a claim under Section 1983 against the City of Rio Rancho by alleging

that the deprivation of their property in violation of due process resulted from Defendant City of

Rio Rancho's failure to adequately hire, train, and supervise employees and officers of the City,

and in particular Mr. Corsie.  Complaint at ¶ 27.  Plaintiffs also allege that the City of Rio Rancho

"knowingly retained Mr. Corsie in a position that allowed him to abuse his power over the Grants

and to cause them harm and damages[.]"  *Id.*

A municipality can be held liable under 42 U.S.C. § 1983 when "the action that is alleged

to be unconstitutional implements or executes a policy statement, ordinance, regulation, or

decision officially adopted and promulgated by that body's officers."  *Monell v. Department of*

*Social Services*, 436 U.S. 658, 690 (1978).  In addition, liability may arise against a municipality

for "constitutional deprivations visited pursuant to governmental 'custom' even though such a

custom has not received formal approval through the body's official decisionmaking channels."

*Id.* at 690-91.  On the other hand, "a municipality cannot be held liable *solely* because it employs a

tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat*

*superior* theory."  *Id.* at 691 (emphasis in original).

"A plaintiff suing a municipality under section 1983 for the acts of one of its employees

must prove: (1) that a municipal employee committed a constitutional violation, and (2) that a

municipal policy or custom was the moving force behind the constitutional deprivation."  *Myers v.*

*Oklahoma County Bd. of County Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998).  Because

Plaintiffs do not state a constitutional claim under § 1983, the failure to train claim cannot survive.

*See Wilson v. Meeks*, 98 F.3d 1247, 1255 (10th Cir. 1996); *Hinton v. City of Elwood, Kansas*,

997 F.2d 774, 782 (10th Cir. 1993) ("A municipality may not be held liable where there was no

underlying constitutional violation by any of its officers.").  Defendants' motion to dismiss the

failure to train claim is thereby granted.

## III.    Plaintiffs' State Law Claims

Plaintiffs also raise two pendant state law claims:  (1) breach of contract against the City

of Rio Rancho; and (2) bad faith breach of the covenant of good faith and fair dealing against the

City of Rio Rancho.  Complaint at ¶ 15, 18.  Because Plaintiffs' federal claims will be dismissed,

the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims.  *See City*

*of Enid*, 149 F.3d at 1156 ("When all federal claims have been dismissed, the court may, and

usually should, decline to exercise jurisdiction over any remaining state claims.").

## IV.    Qualified Immunity

Because the Court finds that Plaintiffs have not stated a constitutional claim under Section

1983, there is no need to consider Defendants' qualified immunity defense.

## V.    Conclusion

For the reasons stated above, IT IS THEREFORE ORDERED that Defendants' Motion

to Dismiss Plaintiffs' Claims **[Doc. Nos. 6, 7]** is hereby **GRANTED** as follows:

1.    Defendants' motion to dismiss Plaintiffs' federal procedural due process claim is

hereby GRANTED without prejudice.  To the extent that Plaintiffs allege takings

claims, they are not ripe for review and the Court has no jurisdiction to hear them.

As to the paving requirement, Plaintiffs have failed to state the deprivation of a

protected property interest. The Court grants Plaintiffs leave to file an amended complaint within fourteen (14) days from the date of this Memorandum Opinion and Order if they can allege facts consistent with this Order to state a timely and valid procedural due process claim for relief; and

2. Defendants' motion to dismiss Plaintiffs' federal substantive due process claim is hereby GRANTED without prejudice; the Court grants Plaintiffs leave to file an amended complaint within fourteen (14) days from the date of this Memorandum Opinion and Order if they can allege facts consistent with this Order to state a timely and valid substantive due process claim for relief; and

3. Defendants' motion to dismiss Plaintiffs' failure to train claim is hereby GRANTED without prejudice; the Court grants Plaintiffs leave to file an amended complaint within fourteen (14) days from the date of this Memorandum Opinion and Order if they can allege facts consistent with this Order to state a timely and valid failure to train claim for relief; and

4. The Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims.

Dated this 30th day of December, 2004.

_____
MARTHA VÁZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE

Attorney for Plaintiff:
Peter Everett IV

Attorney for Defendant:
Randy Bartell