# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

KEN GRANT and CARYL GRANT, as
individuals and as husband and wife,

        Plaintiffs,

vs.

                                         Civ. No. 03-0931 MV/RHS

CITY OF RIO RANCHO; Planning and
Zoning Chairman; ART CORSIE, also,
Director of City Development; Individually,
and in his capacity as Officer of the City of
Rio Rancho,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *Defendants' Motion to Dismiss Plaintiffs'*
*Amended Complaint* **[Doc. No. 76]**, filed February 22, 2005.  The Court, having considered the
motion, briefs, relevant law and being otherwise fully informed, finds that the motion is well taken
and will be **GRANTED**.

## PROCEDURAL BACKGROUND

On August 11, 2003, Caryl and Ken Grant ("Plaintiffs") filed a Complaint in this Court
asserting federal and state causes of action arising from a 1993 land transaction and settlement
agreement with the City of Rio Rancho.  The Complaint named the City of Rio Rancho, as well as
Art Corsie in his individual capacity and in his official capacity as the City's Development Officer.
Plaintiffs seek compensatory damages for their economic and non-economic losses against both
the City of Rio Rancho and Art Corsie (hereinafter "Defendants"). Plaintiffs also seek punitive
damages from Defendant Art Corsie.

On December 30, 2004, the Court dismissed all of Plaintiffs' claims, but allowed them leave to amend their procedural due process claim, substantive due process claim, and failure to train claim **[Doc. No. 64]**.  Plaintiffs filed an Amended Complaint on January 18, 2005 **[Doc. No. 68]**.  Defendants now seek summary judgment on all of Plaintiffs' claims.[1]

## **FACTUAL BACKGROUND**[2]

In 1993, Plaintiffs and Defendants settled several pending actions concerning five lots of commercial property owned by Plaintiffs on Northern Boulevard in the City of Rio Rancho ("Northern Property").  The "Release and Exchange Agreement" mandated that the City of Rio Rancho pay Plaintiffs $300,000 and deed them property facing Unser Boulevard ("Unser Property"), in exchange for Plaintiffs' Northern Property and in full consideration of all damages to Plaintiffs arising out of a zoning dispute between the parties.  In the Release and Exchange Agreement, the parties agreed, *inter alia*, that:  (1) Plaintiffs should be granted a temporary right of egress and ingress adjacent to the property granted by the city; (2) Unser Property "shall not be subject to any eminent domain proceeding or any other action by the city which would have the effect of reducing the size of the parcel to an area insufficient to permit commercial development or use"; and (3) in light of a construction project near Unser Property, Plaintiffs would maintain access from Commercial Drive.  At the time the agreement was made, Mr. Corsie told Plaintiffs that Unser Property was of equal or greater value than Northern Property and that Unser Property would exceed the value of Northern Property as the area became more commercially

---

[1] Plaintiffs agree that this case should be decided pursuant to the summary judgment standard.

[2] The following facts are either undisputed or, where disputed, construed in the light most favorable to Plaintiff.

developed, although these understandings are not reflected in the Agreement itself.

The Agreement, signed by Plaintiffs, also stated the following: "We also fully agree to comply with all City of Rio Rancho ordinances, laws and regulations relating to the use of our real property located at 20th and Southern, Rio Rancho, and as described on page one of this lease agreement." At that time, Plaintiffs did not make any inquiries about what Rio Rancho ordinances, laws, and regulations would apply to the use of their new property because they had no reason to feel that the City would hinder or prevent its development.

In 1994, Defendants demanded return of a portion of Unser Property under the threat of eminent domain. As a result, the City and Plaintiffs entered into another agreement to clarify that the City was retaining an area on the eastern side of the Unser Property for right-of-way and related purposes. As consideration for this agreement, the City paid Plaintiffs $6,100. Pursuant to this agreement, Plaintiffs were to convey Unser Property back to the City, at which time the City would revise the deeds to reflect the reduction in the size of the parcel. After those revisions were made, the City was to deed the remaining Unser Property back to Plaintiffs.

For reasons disputed by the parties, the order to the Unser Property deed recording was reversed and the last deed in the title record showed Unser Property being conveyed to the City. Mr. Grant discovered the recording error in 1994 or 1995 and contacted the City about it. After discovering the error, Plaintiffs continuously urged the City to correct the deed, but the City did not take any action. At some point in 2000, Margot Steadman, a Deputy City Attorney for the City of Rio Rancho authorized a title search to determine whether there was a problem with the

title.[3]  She discovered that there had been a recording error in 1994 that had left record title to the

Unser Property in the City's name.  Ms. Steadman prepared a new deed conveying title to

Plaintiffs that was delivered to Peter Everett, their attorney, on March 19, 2003.  After Mr.

Everett made changes, a revised deed was prepared, executed and filed on September 15, 2003.[4]

During this process, Ms. Steadman never was informed that Plaintiffs potentially had a buyer for

the Unser Property and that the sale was contingent on resolution of the title problem.

     Sometime in 2002, Plaintiffs put Unser Property on the market with a realtor named

Harold De La Plane.  Around August 2002, Mr. De La Plane found a potential buyer.  Mr. Grant

never spoke directly to the potential buyer, did not know his name or address, and did not know

how to contact him independent of Mr. De La Plane.  Mr. Grant did know that the buyer planned

to pay $60,000 for the property.  At some point, the buyer contacted Mr. Corsie to ask him about

the development requirements for Unser Property.  There is no admissible evidence about the

substance of this conversation.[5]

     In August or September of 2002, Mrs. Grant, who worked at City Hall at the time, asked

---

[3] Plaintiffs argue that Ms. Steadman's affidavit should be disregarded because she does not have personal knowledge of the events discussed therein.  It appears to the Court, however, that Ms. Steadman's affidavit is based on personal knowledge, as she was involved personally in investigating and correcting the Unser Property deed problem.

[4] By this time, Plaintiffs state it is undisputed that "both [Unser Property's] character and value had been drastically changed by the reduction in size, destruction of access, and application of unlawful paving and impact fee requirements."  Plaintiffs provide no evidence that the property's value had been "drastically changed."  Plaintiffs offer no concrete evidence of the property's value at the time they received it and again in 2003.

[5] Plaintiffs state in their affidavit that "Mr. Corsie told a potential buyer that he would have to pave and that the paving would cost roughly $60,000 plus a $10,000 impact fee."  Because this is hearsay, it cannot be considered by the Court on summary judgment.

Mr. Corsie if he had spoken to anyone about the requirements of developing Unser Property.  Mr. Corsie told her that he recalled speaking to someone about the requirements for developing commercial property in general, but was not aware that this person was specifically interested in buying and developing Unser Property.  Mr. Corsie did not know the name of the person to whom he spoke.  At that time, Mrs. Grant asked Mr. Corsie to provide her with the source of the paving requirement.  After this, Plaintiffs asked Mr. Corsie several times to produce the ordinance requiring paving.

Finally, on September 26, 2002, Plaintiffs wrote Mr. Corsie a letter again asking about requirements for developing Unser Property.  The letter stated Plaintiffs' hope "that a buyer's city-imposed obligations do not make a sale unrealistic.  Our property would not be listed if we were not serious about selling it."  On October 28, 2002, Mr. Corsie responded to Mrs. Grant, informing her that the development requirements of the parties are "reinforced within the ordinance of the City...which clearly state[] that new development shall be served by a paved facility."  He concluded his letter by stating the following:  "As previously discussed, requirements of the building permit review process for new development on this parcel would include, but not necessarily be limited to, the requirement for paved access."  The City never issued a written order stating that the road had to be paved or that the property could not be sold without paved access.[6]  Further, at no time did Plaintiffs submit an application for a development permit for the

---

[6] Plaintiffs dispute this, stating that Mr. Corsie's order was the equivalent of a written order of the City that paved access was required for the building permit review process.  The Court does not consider Mr. Corsie's letter a written order from the City to undertake paving immediately or to pave before the property could be sold.

Unser Boulevard property or apply for a variance from the paving requirement.[7]

The paving requirement applicable to Unser Property and mentioned in Mr. Corsie's letter to Plaintiffs states as follows: "SURFACE USE OF STREETS. ... (F) All newly developed land within the city shall be served by at least one paved access that shall be an all-weather facility during a 100-year design storm."[8]   The ordinance is found under a chapter entitled "Erosion Control; Storm Drainage."   The stated purposes of the ordinance include, *inter alia*, "public and private losses due to flooding," the prevention of "public safety hazards," and the prevention of "damage to private property caused by storm runoff from other private property."

According to Dolores Wood, the City's Zoning Manager, the City always has conditioned the issuance of new commercial development permits upon the existence or construction of paved access.  A party can appeal a development decision or incorporating conditions, including paved access, with which they disagree.  The relevant ordinance provides as follows: "Appeal of any action or decision by the City Development Department may be filed with the Planning and Zoning Board within 30 days after the date of the determination by the City Development

---

[7] Plaintiffs never submitted an application for a permit to develop the Unser Property. Further, there is no evidence that Plaintiffs applied for a variance to determine if the paving requirement could be waived.

[8] Plaintiffs claim in their affidavit that this ordinance does not exist.  This claim is directly contradicted by evidence of the ordinance certified by the City clerk that was submitted by Defendants.  Further, Mrs. Grant's statement in her affidavit that Ken Curtis, a former Rio Rancho Public Works Director, told her that there is no paving ordinance in existence is hearsay and cannot be considered by the Court on summary judgment.

It appears that Ordinance § 153.21 was previously codified as Ordinance 8-7-7 of the Health, Safety, and Sanitation Chapter of the City ordinances.  Thus, Plaintiffs' claim that they never saw § 153.21 is misleading.  Ordinance 8-7-7 and 153.21 appear to be the same, as referenced in § 153.21 in a parenthetical:  ('87 Code, § 8-7-7).

Department."  Rio Rancho City Ord. §150.08.  Furthermore, a party can request a variance with

the City's Planning and Zoning Board.[9]

Plaintiffs dispute Ms. Wood's assertion that all newly developed commercial property is

subject to a paving requirement, stating in their motion the following:

> Plaintiffs are reliably informed and believe that not only have
> development permits been issued, but that development has
> frequently, if not routinely, been permitted to commence, prior to
> the provision of paved access by the developer. (former Rio Rancho
> City Council member Felicie Truscio will testify to the arbitrary
> application of building/development permits by Art Corsie, his
> show of favoritism to certain developers, that there are
> developments in which people live without paving having been
> required; the Court is also asked to take Judicial Notice of the
> developments in Rio Rancho in which no paving exits; due to lack
> time an affidavit of the undersigned is attached as Exhibit 5,
> concerning the testimony of Felicie Truscio based on direct, in
> person, statements made by Mrs. Truscio to the undersigned).[10]

---

[9] Plaintiffs argue that this fact is "wholly irrelevant" under the facts and legal standards applicable to this case because Plaintiffs were told about the paving requirement "long before any development planning had even commenced, let alone reached the permit application stage." "Moreover, this was done in a manner which effectively thwarted any realistic possibility of ever reaching that stage, by imposing exorbitant cost and fee estimates that would render any development cost-prohibitive."  The Court disagrees with Plaintiffs that this fact is "wholly irrelevant."

[10] In his affidavit, Mr. Everett states that "Ms. Truscio is very knowledgeable of the activities of the City of Rio Rancho. She was very surprised to hear that Art Corsie tried to use the flood control ordinance as a paving requirement for development for the Grant's property." Further, he states that "Ms. Truscio is specifically aware of the arbitrary, illegal, and capricious manner in which Mr. Corsie deal with favored developers."  Finally, Mr. Everett states that when subpoenaed, Ms. Truscio will tell the truth about these issues.

These statements are not admissible for purposes of a summary judgment motion.  Thus, the Court lends no weight to Mr. Everett's affidavit.  Further, Mr. Corsie and Ms. Wood's affidavits, based on personal knowledge, directly contradict this.  They state that during their employment, paved access was always a requirement for the issuance of a development permit for commercial property.  In his affidavit, Mr. Corsie states:  "I am unaware of any application for a development permit for commercial property within the City limits which was granted that did not

These statements are inadmissible.  Federal Rule of Civil Procedure 56(e) mandates that evidence offered in opposition to a motion for summary judgment be "made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." FED. R. CIV. P. 56(e).   Hearsay testimony cannot be considered because "[a] third party's description of [a witness'] supposed testimony is not suitable grist for the summary judgment mill." *Thomas v. International Business Machines*, 48 F.3d 478, 485 (10th Cir. 1995) (citations omitted).

Plaintiffs state that genuine issues of material fact remain in dispute on such matters as the "impact fee" and "how the city has enforced the paving provisions of the Policy and/or Ordinance or Policy has ever been applied to require paved access to be constructed prior to the commencement of development."  Other disputed facts proffered by Plaintiff include "whether Defendants have destroyed all reasonable routes of access to the Unser Property" and "whether any remedy was available to the Grants to challenge Defendants' decision regarding application of the paving requirement and the impact fee to their property."  Plaintiffs list several other disputed issues of material fact, but do not provide any admissible evidence that these issues are, in fact, disputed.  Without such evidence, Plaintiffs have not met their burden on summary judgment.

## **STANDARD**

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).  Under Rule 56(c),

also require paved access to the property."  Plaintiffs are unable to present any competent evidence to rebut this statement.

summary judgment is appropriate when the court, viewing the record in the light most favorable to the nonmoving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Thrasher v. B & B Chem. Co., Inc.,* 2 F.3d 995, 996 (10th Cir. 1993).

The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324 (quoting Fed. R. Civ. P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (citation omitted).

Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Pittsburg & Midway Coal Min. Co. v. Yazzie,* 909 F.2d 1387, 1427 (10th Cir. 1990), the burden on the moving party may be discharged by demonstrating to the court that there is an absence of evidence to support the nonmoving party's case, *Celotex,* 477 U.S. at 325. In such a situation, the moving party is entitled to judgment as a matter of law "because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 322.

## DISCUSSION

Defendants seek summary judgment on all of Plaintiffs' claims in the Amended Complaint. Defendants further argue that if all of the federal claims are dismissed, there is no basis for the

Court to exercise jurisdiction over Plaintiffs' state law claims.  The Court will address each of these arguments in turn.

## I.   __Plaintiffs' Viable Claims__

In their Amended Complaint, Plaintiffs make the following claims:  (1) breach of contract, based on Defendants failure to fulfill terms of the Settlement Agreement; (2) bad faith breach of the covenant of good faith and fair dealing; (3) deprivation of property without procedural and substantive due process of law; (4) deprivation of property without procedural due process of law based on Plaintiff Caryl Grant's termination from the City's employ; (5) municipal liability for negligent hiring, training, supervision, and retention; and (6) fraud and fraudulent inducement.

Plaintiffs' fraudulent inducement claim and procedural due process claim based on Mrs. Grant's termination from the City's employ were not included in Plaintiffs' first Complaint.  On Plaintiffs' motion, the Court recently dismissed the new procedural due process claim.  Plaintiffs' fraudulent inducement claim remains, however.  Defendants argue that this claim should not be included because the Court's Memorandum Opinion and Order did not grant Plaintiffs leave to amend their complaint to add new claims, rather the Order only allowed Plaintiffs to supplement their procedural and substantive due process claims and the failure to train claim to state valid claims for relief.

In response, Plaintiffs argue that "Defendants' (sic) misstate the nature of the claims asserted in Plaintiffs' FAC.  Rather than adding new claims, Plaintiffs allege additional facts to support the causes of actions for which leave to amend was granted."  Thus, Plaintiffs concede that the fraud and fraudulent inducement is not a separate claim.  Accordingly, the Court only will consider Plaintiffs' fraud allegations to the extent that they create a genuine issue of material fact such that summary judgment is inappropriate on Plaintiffs' other substantive claims.

## II.     Are Defendants Entitled to Summary Judgment on Plaintiffs' § 1983 Claims?

Plaintiffs make two claims under 42 U.S.C. § 1983:  (1) Defendants deprived them of their property without procedural due process; and (2) Defendants deprived them of their property without substantive due process. Plaintiffs also attach a "failure to train" claim to the other constitutional violations.  Defendants argue that summary judgment is appropriate on both of Plaintiffs' § 1983 claims.  Plaintiffs argue that their procedural and substantive due process claims are valid and meritorious.

The Due Process Clause of the Fourteenth Amendment provides:  "[N]o state shall deprive any person of life, liberty, property, without due process of law."   As set forth in the Court's previous Memorandum Opinion and Order, this Clause permits three types of actions. First, the Clause incorporates many of the specific protections defined in the Bill of Rights, and therefore permits a plaintiff to bring suit for state officials' violation of enumerated constitutional rights.  *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990).  Second, the Due Process Clause contains a substantive component that bars certain arbitrary governmental actions.  *Daniels v. Williams*, 474 U.S. 327, 331 (1986).  Finally, the Clause includes a guarantee of fair procedure. A procedural due process violation occurs where the state violates the Constitution not in the action it takes, but in its failure to provide sufficient process to guarantee that an individual is treated fairly.  *See, e.g., Fuentes v. Shevin*, 407 U.S. 67, 92 (1972). The distinction between substantive and procedural due process claims is important.  Courts have long found that "[p]rocedural due process ensures the state will not deprive a party of property without engaging fair procedures to reach a decision, while substantive due process ensures the state will not deprive a party of property for an arbitrary reason regardless of the procedures used to reach that decision."  *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000)

(citations omitted).

A.      **Plaintiffs' Procedural Due Process Claim**

Plaintiffs list several of Defendants' acts which they believe invoke the protections of procedural due process.  In attempting to describe the property interests allegedly deprived by Defendants, Plaintiffs discuss at length the following acts in their Amended Complaint:  (1) Defendants' failure to grant marketable title to Plaintiffs and the devaluing of the property based on Defendants' breach of the Settlement Agreement; (2) Defendants' actions in taking back a portion of the Unser Property for ditch and road purposes under the threat of eminent domain; (3) Defendants' imposition of an "illegal and unauthorized" pre-development paving requirement and an "impact fee" that prevented Plaintiffs from selling the property to an "existing ready, willing, and able buyer, who would have purchased it but for interference by the Defendants"; and (4) Loss of egress and ingress.  Plaintiffs allege that these actions have rendered Unser Property "valueless and useless."  Complaint at 4.

It is undisputed that deprivation of property without due process gives rise to a claim under § 1983.  *See Gillihan v. Shillinger*, 872 F.2d 935, 939 (10th Cir. 1989).  To state a claim for a violation of due process, plaintiff must first establish that it has a protected property interest and, second, that defendants' actions violated that interest. *See Weathers v. West Yuma County Sch. Dist.*, 530 F.2d 1335, 1337 (10th Cir. 1976). The property interest must be "specific and presently enforceable." *Doyle v. Oklahoma Bar Ass'n*, 998 F.2d 1559, 1569 (10th Cir. 1993).  A property interest protected by the due process clause results from a legitimate claim of entitlement created and defined by "existing rules or understandings that stem from an independent source such as state law." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).  In fact, property or liberty interests attain "constitutional status by virtue of the fact that they have

-12-

been initially recognized and protected by state law." *Paul v. Davis*, 424 U.S. 693, 710 (1976).

Finally, if a plaintiff demonstrates that he has been deprived of a protected property interest, the

court must then determine whether the state procedures available for challenging the deprivation

satisfy the requirements of due process. *Hudson v. Palmer*, 468 U.S. 517, 531-32 (1984).

> 1.    *Plaintiffs' Property Interests*

Plaintiffs argue that they "have, at all times ... had a legitimate claim of entitlement to; and

a specific, present enforceable, property interest" in Unser Property.  As it did in its previous

Opinion, the Court will review Plaintiffs' property interests and whether those interests are

protected by the due process clause.  First, the Court finds no protected property interest in the

alleged breach of the settlement agreement.  *See, e.g., Economic Dev. Corp. of Dade County, Inc.*

*v. Stierheim*, 782 F.2d 952, 954 (11th Cir. 1986) (finding that plaintiff's contract with the county

failed to afford it a constitutionally protected property interest); *Bishop v. Wood*, 426 U.S. 341,

349-50 (1976) (a mere allegation of a breach of a contractual right is not a deprivation of

property without constitutional due process).  Second, Plaintiffs have a protected property

interest where a state takes property without providing just compensation, however, such a claim

is covered by the Fifth Amendment.  *See, e.g., Williamson County Reg'l Planning Comm'n v.*

*Hamilton Bank*, 473 U.S. 172 (1985).  Third, Plaintiffs have a protected property interest where a

city imposes a zoning ordinance requirement if it does not follow particular procedures to reach

the decision.  *See, e.g., Carter v. City of Salina*, 773 F.2d 251, 254 (10th Cir. 1985) ("It is the

general rule that zoning ordinances are in derogation of common-law property rights and find

their authority through the state police power; accordingly, municipalities and other political

subdivisions must scrupulously comply with statutory requirements, including notice and

hearing.").  It should be noted that Plaintiffs in the instant case are not challenging a zoning

ordinance.

2.     *Deprivation of Property Interests*

The Court next examines whether Defendants' alleged actions have "deprived" Plaintiffs of any of the protected interests without due process of law.  First, where the state does not have the opportunity to provide a predeprivation remedy, the act of deprivation, for the purpose of procedural due process, is not complete until the state "fails to provide a suitable postdeprivation remedy." *Hudson*, 468 U.S. at 532, n.12.  Consequently, the Supreme Court has held "that an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Id*. at 533.  On the other hand, the *Gillihan* Court stated that when the deprivation

> is not random and unauthorized, but is pursuant to an affirmatively established or *de facto* policy, procedure, or custom, the state has the power to control the deprivation and, therefore, generally must, in the absence of compelling reasons to the contrary, give the plaintiff a predeprivation hearing. In such cases, the availability of an adequate state post-deprivation remedy is irrelevant and does not bar a § 1983 claim.

872 F.2d at 939-40 (citations omitted). Within this legal framework, the Court now will consider whether Plaintiffs' procedural due process claims are viable.

a.     Plaintiffs' Takings Claims

Plaintiffs' claims regarding the use and enjoyment of their property, the devaluation of their property based on the City's actions, the failure of the City to provide marketable title, and the seizure of the land under threat of eminent domain essentially all amount to takings claims. Thus, the Court finds that these claims are more properly covered by the Fifth Amendment.

Defendants argue that to the extent Plaintiffs allege a taking claim, it should be dismissed

as unripe because Plaintiffs have not pursued any of their state remedies.  Plaintiffs, on the other

hand, argue that their allegations of "a continuing series of unlawful, arbitrary and malicious

actions, undertaken pursuant to established city Policy (sic), which resulted in a denial of the

Plaintiffs' right to either use their property for a lawful purpose or to sell it to a buyer seeking

commercially viable property," state a cause of action distinct from a takings claim.  The Court

agrees with Defendants.  "[I]f a State provides an adequate procedure for seeking just

compensation, the property owner cannot claim a violation of the Just Compensation Clause until

it has used the procedure and been denied just compensation."  *Williamson County*, 473 U.S. at

195.

Here, the State of New Mexico has provided an adequate posttaking remedy -- an inverse

condemnation proceeding -- which Plaintiffs have not utilized.  In New Mexico, an inverse

condemnation action can compensate a plaintiff for "'the value of property taken by the agency,

though no formal exercise of the power of eminent domain has been completed.'"  *Public Serv.*

*Co. of New Mexico v. Catron*, 646 P.2d 561, 563, 98 N.M. 134, 136 (N.M. 1982).  In addition,

property need not be actually taken for a property owner to be compensated under an inverse

condemnation action; it is enough if the plaintiff suffers consequential damages.  *See id.*  Unless

and until plaintiffs avail themselves of this remedy in so much as they allege that Defendants have

deprived their land of any use or value, Plaintiffs' takings claims will remain unripe. *See Miller v.*

*Campbell County*, 945 F.2d 348, 352 (10th Cir. 1991) (finding that failure to invoke Wyoming

inverse condemnation procedure before seeking federal court relief renders case unripe for

consideration); *see also Bateman v. City of West Bountiful*, 89 F.3d 704, 706 (10th Cir. 1996)

("whether a claim is ripe for review bears on the court's subject matter jurisdiction under Article

III of the Constitution").  Thus, to the extent that Plaintiffs argue what is in essence a takings

claim or a "fraudulent takings" claim, the Court again concludes that it is not ripe and therefore the Court lacks jurisdiction to entertain it on summary judgment.

b.   <u>Paving Requirement</u>

As set forth in the Court's previous Opinion, Plaintiffs allege a distinct procedural due process claim with regard to the "illegal" and "unauthorized" paving requirement.  Plaintiffs argue that the imposition of this paving requirement by the City, along with its attendant "impact fee" deprived them the opportunity to make lawful use of their property free from arbitrary interference.

The evidence presented by the parties on summary judgment demonstrates that there is no genuine issue of fact and Defendants are entitled to judgment as a matter of law on this issue. First, the paving ordinance did not "deprive" Plaintiffs of their rights in violation of procedural due process.  The paving ordinance has been in existence since 1984, well before Plaintiffs and the City executed the Release and Exchange Agreement.  Accordingly, Plaintiffs' property has always been subject to the paved access requirement set forth in City Ordinance § 153.21.[11]  As Defendants correctly state, then, a "claim of deprivation based on the application of the paved access requirement of § 153.21 ... cannot logically be stated because plaintiffs never had a property interest which was not subject to that requirement."

Next, a deprivation could not occur because the City never officially "imposed" the paving requirement on the property, nor did the City require Plaintiffs to provide paved access before the property could be sold.  While Mr. Grant states that he believed Mr. Corsie's letter to Plaintiffs mentioning the paving requirement to be an "order," this strains credulity.  Mr. Corsie's letter is

---

[11] When Plaintiffs signed the Settlement Agreement with the City in 1993, they agreed to comply with all City laws, statutes, and ordinances.

-16-

an informal response to Plaintiffs' inquiry about development requirements, not an official

mandate that Plaintiffs pave immediately.  Moreover, Plaintiffs did not submit a development

permit for the property.  If they had done so, they could have appealed the imposition of the

paving ordinance and any other ordinance they disagreed with pursuant to City Ordinance

§150.08.  Challenging the City's *anticipated* application of the paving ordinance to Unser

Property, however, is inappropriate.[12]

Even assuming the ordinance was "imposed" officially on the property, Plaintiffs fail to

provide evidence that state law guarantees them any procedure before the City can do so.  New

Mexico Statute § 3-17-1 states in relevant part:

> The governing body of a municipality may adopt ordinances or resolutions not
> inconsistent with the laws of New Mexico for the purpose of:
>
>> A.  effecting or discharging the powers and duties conferred by law upon
>> the municipality;

---

[12] Plaintiffs attempt to argue that their claim is ripe for adjudication because it would have
been prohibitively expensive for them to submit a development permit and that such a process
would have been futile anyway.  Plaintiffs cite *Triple G Landfills, Inc. v. Board of Comm'rs of
Fountain County*, 977 F.2d 287 (7th Cir. 1992) in support of this argument.  The case states:

> Postponing adjudication would therefore force an unwarranted
> dilemma on the applicant:  either scuttle its development plans
> altogether in deference to a potentially invalid county regulation, or
> complete the expensive and time-consuming state process, submit a
> permit application that the county is almost certain to reject and
> then, after incurring substantial sunk costs, bring a facial challenged
> to the ordinance.

*Id*. at 289-91.  The problems with Plaintiffs argument are two-fold.  First, Plaintiffs themselves
admit that development of the property was not eminent, thus there is no direct or immediate
harm to them.  Further, Plaintiffs have not demonstrated to the Court that there is a buyer
currently interested in the property that would be directly or immediately harmed by application of
the ordinance since paving is not required unless new development occurs.  Second, there is no
evidence to support any inherent illegality in the paving ordinance.

> B.  providing for the safety, preserving the health, promoting the prosperity
> and improving the morals, order, comfort and convenience of the
> municipality and its inhabitants[.]

N.M. STAT. ANN. 1978 § 3-17-1.  This section makes no mention of a right to notice and a

hearing before a city can impose an ordinance.  Further, Plaintiffs have not provided evidence of

such a benefit or entitlement in state law or the 1993 Settlement Agreement.  In fact, the

Agreement clearly states:  "We ... fully agree to comply with all City of Rio Rancho ordinances,

laws and regulations relating to the use of our real property[.]"[13]

Finally, even assuming that Plaintiffs could show that Defendants deprived them of a

protected interest, Plaintiffs have not shown that a state postdeprivation remedy is inadequate.

Where the state does not have the opportunity to provide any predeprivation remedy, the act of

deprivation, for the purpose of procedural due process, is not complete until the state "fails to

provide a suitable postdeprivation remedy."  *Hudson*, 468 U.S. at 532, n.12.  Consequently, the

Supreme Court has held "that an unauthorized intentional deprivation of property by a state

employee does not constitute a violation of the procedural requirements of the Due Process

Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is

available."  *Id*. at 533.  Furthermore, a state postdeprivation remedy need not provide all the relief

that might be available under § 1983.  *See id*. at 544.  It is clear from the Amended Complaint that

Plaintiffs have not brought a breach of contract claim or tort conversion claim in state court.

Furthermore, Plaintiffs have not filed a state action against the City to challenge the ordinance

itself as violative of state law or Plaintiffs' rights.

_____

[13] Again, the Court notes that ordinances are not the same as zoning decisions, which
require "municipalities and other political subdivisions" to "scrupulously comply with statutory
requirements, including notice and hearing" and to provide remedies to citizens if the
requirements are not followed.  *City of Salina*, 773 F.2d at 254.

-18-

In 1990, however, the Supreme Court held in *Zinermon v. Burch* that the existence of state remedies will not preclude procedural due process claims where (1) the risk of the deprivation complained of was foreseeable to the State, (2) the State might have reduced that risk either through additional predeprivation safeguards or by limiting the defendants' discretion in implementing established procedures, and (3) the defendants are authorized by the State to implement the requisite safeguards.  494 U.S. at 989-90.

In the instant case, Plaintiffs argue that the risk of deprivation was "foreseeable" to the City because "both the City and Corsie were defendants in the previous federal litigation, so the City was well aware of Corsie's animosity toward the Plaintiffs--and of the vague Policy giving him broad discretion to enforce paving requirements as he may choose.  Yet he was permitted to continue to exert his authority over Plaintiffs and the Unser Property."  Pltf. Resp. at 13.  These bold assertions by Plaintiffs are entirely unsupported by any competent evidence, aside from Plaintiffs' statements in their affidavit that "Mr. Corsie has had it out for us since the case was won by us in 1993 and has done everything he could possibly do to interfere with our use of the property and to ensure that his employer, Rio Rancho, did the same."  Plaintiffs, however, present no competent evidence to demonstrate that the City knew anything about Mr. Corsie's animosity towards them such that there would be any reason to limit or prohibit contact between him and Plaintiffs.  Further, there is also no competent evidence that the City knew that Mr. Corsie was, as Plaintiffs allege, applying the paving ordinance arbitrarily.  Finally, it is not at all clear that the City could have imposed additional predeprivation safeguards as both Ms. Wood and Mr. Corsie state that the paving ordinance was applied equally to all commercial properties undergoing new development.

For all of these reasons, the Court will grant Defendants summary judgment on Plaintiffs'

procedural due process claims.  To the extent that Plaintiffs continue to allege takings claims, they

are not ripe for review.  With regard to the paving requirement, Plaintiffs are unable to show that

the City officially imposed it on Unser Property or, if it was imposed, that the City did so

arbitrarily, without providing Plaintiffs fair procedure.

### B.      Substantive Due Process

Plaintiffs also allege a substantive due process violation based on Defendants' "illegal,

arbitrary, and capricious" actions.  Among the bases for their substantive due process claim,

Plaintiffs state that Defendants' conduct was improperly motivated by political bias and a desire to

retaliate against them for prior litigation; the City's paving requirement and impact fee were

enforced in an uneven manner; Defendants intentionally misapplied the paving ordinance; and Mr.

Corsie's statements to the potential buyer of Unser Property "were made knowingly, maliciously,

falsely, and with the improper motive of retaliation" against Plaintiffs.  Plaintiffs contend that

these actions are "precisely the type conduct that is so outrageous as to 'shock the conscience'"

and thus are "especially appropriate for analysis under a substantive due process theory."

Complaint at ¶ 94.

The Tenth Circuit has not made clear "what interest is required to trigger substantive due

process guarantees." *Archuleta v. Colorado Dept. of Insts.*, 936 F.2d 483, 489 (10th Cir. 1991)

(citing *City of Lawrence*, 927 F.2d at 1119).  The Supreme Court itself has not made clear what

property interests are entitled to substantive due process protection.  *See Regents of Univ. of*

*Michigan v. Ewing*, 474 U.S. 214, 229 (1985) (Powell, J., concurring).  The Court has, however,

provided some guidance:  "While property interests are protected by procedural due process even

though the interest is derived from state law rather than the Constitution, substantive due process

rights are created only by the Constitution." *Id.* (citation omitted); *see also Mangels v. Pena*, 789 F.2d 836, 839 (10th Cir. 1986) (substantive due process rights "are founded not upon state provisions but upon deeply rooted notions of fundamental personal interests derived from the Constitution."). In *Ewing*, Justice Powell criticized the student's interest in "continued enrollment" in an educational program as "essentially a state-law contract right." 474 U.S. at 229. He also noted that it bore "little resemblance to the fundamental interests that previously have been as implicitly protected by the Constitution." *Id.* at 229-30.

The Third Circuit recently supported this position:

> "[N]ot all property interests worthy of procedural due process protections are protected by the concept of substantive due process." Rather to state a substantive due process claim, "a plaintiff must have been deprived of a *particular quality* of property interest." ... [W]hether a certain property interest embodies this "particular quality" is not determined by reference to state law, but rather depends on whether that interest is "fundamental" under the United States Constitution.

*Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 140 (3rd Cir. 2000) (citations omitted, emphasis in original); *accord Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339, 1351 (6th Cir. 1992).

As a preliminary matter, Plaintiffs have failed to allege in their Amended Complaint a distinct interest protected by the substantive due process clause. The interests allegedly deprived by Plaintiffs, assuming they are actually interests held by Plaintiffs, are all interests created by state law that do not invoke the fundamental substantive protections of the Constitution. It is not enough to allege a substantive due process interest by concluding that Defendants' actions were arbitrary and capricious, amounting to behavior which "shocks the conscience." And while the concept of substantive due process is not fixed or final, *see Rochin v. California*, 342 U.S. 165, 170 (1952), it is generally accorded to matters relating to marriage, family, procreation, and the

right to bodily integrity. *See Albright v. Oliver*, 510 U.S. 266, 272 (1994).  Put another way, it protects only those interests that are "implicit in the concept of ordered liberty." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (citation omitted).

Furthermore, redress for a substantive due process violation is disfavored where the claim is coextensive with another, more cognizable constitutional claim.  In *Nestor Colon Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32, 45 (1st Cir. 1992), the First Circuit found that, "[s]ubstantive due process, as a theory for constitutional redress, has in the past fifty years been disfavored, in part because of its virtually standardless reach."  *See also County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (The Supreme Court has "always been reluctant to expand the concept of substantive due process.").  The court in *Custodio* found that to the extent that the plaintiff's substantive due process claim was coextensive with a First Amendment claim, there was "no need to enter the uncharted thicket of substantive due process." 946 F.2d at 46.

Thus, in the instant case, to the extent that Plaintiffs have alleged what amount to takings claims, it is inappropriate for the Court to consider them under the substantive due process clause as they are specifically covered by the Fifth Amendment.  As to Plaintiffs' due process claim regarding the paving requirement, however, Plaintiffs seem to allege a distinct violation from unfair procedure, which is covered by procedural due process.  They contend that the defendants exercised their power "without any reasonable justification in the service of a legitimate governmental objective." *Lewis*, 523 U.S. at 846 (citing *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).  This is not enough, however, to make out a protected interest under the substantive due process clause.  *See Greenbriar Village, LLC v. City of Mountain Brook*, 345 F.3d 1258, 1262 (11th Cir. 2003) (affirming the dismissal of a developer's substantive due process claim where a municipality enacted an ordinance that caused an earth disturbance permit to be canceled because

the rights at issue were state law property rights, not constitutional rights).

Even if a party can make out an interest sufficient to trigger substantive due process protection that is not "covered" more specifically by another constitutional amendment, the Tenth Circuit has required a plaintiff to demonstrate that the defendant's conduct was arbitrary, lacking a rational basis, or shocking to the conscience of federal judges to state a claim. *Butler v. Rio Rancho Pub. Schs. Bd. of Educ.*, 341 F.3d 1197, 1200-01 (10th Cir. 2003). Substantive due process will only extend to "government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill-advised." *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994) (citations omitted). In sum, substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority. *See, e.g., Lewis*, 523 U.S. at 846 ("only the most egregious official conduct can be said to be 'arbitrary' in the constitutional sense"); *Abeyta v. Chama Valley Indep. Sch. Dist.*, 77 F.3d 1253, 1256-57 (10th Cir. 1996) (describing the acts necessary to constitute a substantive due process violation as the "brutal and inhumane abuse of official power literally shocking to the conscience").

For example, "[a]rbitrary conduct that might violate zoning regulations as a matter of state law is not sufficient to demonstrate conduct so outrageously arbitrary as to constitute a gross abuse of governmental authority that will offend the substantive component of the Due Process Clause." *Natale v. Town of Ridgefield*, 170 F.3d 258, 262 (2nd Cir. 1999). The First Circuit similarly has found that "rejections of development projects and refusals to issue building permits do not ordinarily implicate substantive due process"... "[e]ven where state officials have allegedly violated state law or administrative procedures." *PFZ Properties, Inc. v. Rodriguez*, 928 F.2d 28, 31 (1st Cir. 1991) (citations omitted).

Employing these guiding legal principles, the Court finds that Plaintiffs cannot state a claim for a substantive due process violation and thus Defendants are entitled to summary judgment.  First, Plaintiffs have not alleged an interest "implicit in the concept of ordered liberty" such that substantive due process protection is warranted.  Second, even if Plaintiffs state a protected interest, none of Plaintiffs' evidence offered in support of denying summary judgment describes conduct that is so arbitrary and capricious as to shock the conscience.  Plaintiffs offer evidence that the City made assurances to them that they would retain access to Unser from Commercial Drive, that Unser Property would be of greater value than their previous property, and that they would be granted marketable title -- none of which came to pass.  Plaintiffs go on to state that while "[t]he City may well have the authority to impose paving requirements on landowners," it only has the right do so "through the fair application of a legally supported policy--which is not the case here."   Again, Plaintiffs fail to establish a genuine issue of material fact as to the validity and legality of the ordinance in question.  Furthermore, Plaintiffs fail to provide any competent evidence that the paving ordinance, assuming it was imposed on Unser Property, was applied in an uneven or arbitrary manner, or that the paving ordinance does not bear a rational relationship to the City's interests in preventing flood damage on surface streets.[14]  *See FM*

---

[14] As a result, Plaintiffs' argument that this case is analogous to *Zaintz v. City of Albuquerque*, 739 F. Supp. 1462 (D.N.M. 1990) is unavailing.  In that case, the court held that summary judgment was inappropriate on a substantive due process claim involving application of zoning ordinances because the plaintiff presented "barely sufficient circumstantial evidence of political bias."  The district court stated:

> [A]s evidence of defendants' arbitrary and capricious conduct towards them, plaintiffs contend they were required to strictly comply with all of the provisions of the Ordinance while their competitor was, because of political favoritism, allowed to remain ... in clear violation of the Ordinance's 300 foot locational requirement. Plaintiffs claim that this political bias manifested itself

*Properties Operating Co. v. City of Austin*, 93 F.3d 167, 174-75 (5th Cir. 1996) (holding that

governmental action with regard to land-use issues and zoning comport with substantive due

process if the action is rationally related to a legitimate government interest).

Plaintiffs' argument that Mr. Corsie's delayed response to Plaintiffs' request for

information about development requirements for Unser Property – about a month – demonstrates

a deliberate indifference to Plaintiffs' rights is without merit.  Mr. Corsie states in his affidavit that

he responded to the letter in his regular course of business.  Perhaps Mr. Corsie could have

responded to the letter a week or two sooner, but this cannot be termed indifference.  Plaintiffs

further state that "the City had notice of deficiencies in Corsie's performance, at least with regard

to these Plaintiffs, originating over a dozen years before.  Certainly, this could support a finding

that the City deliberately failed to supervise or train Corsie, thus in a manner exhibiting 'deliberate

indifference' to the rights of the Grants."   Nowhere in Plaintiffs' exhibits is there any indication

that the City was on notice that Mr. Corsie suffered from "deficiencies" or that he treated

Plaintiffs poorly.

Finally, Plaintiffs argue that the ordinance is unconstitutionally vague and that this

"vagueness" supports its substantive due process claim.  This argument has no merit and was not

_____

> in essentially four ways: that the City harassed their operation of the
> Big Apple by unreasonably limiting their occupancy load;
> threatened them on several occasions with outright closure;
> unreasonably applied the sprinkler requirement of the Fire Code to
> their facility; and allowed Club Rio to remain open while the City
> Administration, at the behest of plaintiffs' competitor, attempted to
> amend the locational requirement of the Ordinance.

*Id.* at 1470.  Plaintiffs have presented no such similar evidence in this case, aside from their
conclusory allegations that the City and Mr. Corsie were biased against them and "imposed" the
ordinance in retaliation for Plaintiffs' earlier litigation against the City.  This is not enough to
overcome summary judgment.

pled in Plaintiffs' Amended Complaint.  If Plaintiffs wished to challenge the validity of the

ordinance on its face, they should have done so in a different way.  This litigation is not the

appropriate vehicle.  Thus, the Court takes no position and need not take a position on whether

the ordinance is unconstitutionally vague.

In sum, the conduct described by Plaintiffs does not "shock the conscience" in a

constitutional sense.  *See Rochin*, 342 U.S. at 165 (conduct shocked the conscience where police

officers involuntarily pumped an individual's stomach to obtain evidence); *City of Cuyahoga

Falls, Ohio v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 198-99 (2003) (conduct did not shock

the conscience where city refused to issue new building permits pending the resolution of a

referendum, even though the city had already approved a developer's site plan and building

permits).  The Court will grant Defendants summary judgment on Plaintiffs' substantive due

process claim.

### C.       Failure to Train Claim

Plaintiffs allege a § 1983 claim against the City of Rio Rancho for failure to adequately

hire, train, and supervise employees and officers of the City, and in particular Mr. Corsie.

Complaint at ¶ 95.  Plaintiffs also allege that the City of Rio Rancho "knowingly retained Mr.

Corsie in a position that allowed him to abuse his power over the Grants and to cause them harm

and damages[.]"  *Id.*

A municipality can be held liable under 42 U.S.C. § 1983 when "the action that is alleged

to be unconstitutional implements or executes a policy statement, ordinance, regulation, or

decision officially adopted and promulgated by that body's officers."  *Monell v. Department of

Social Services*, 436 U.S. 658, 690 (1978).  In addition, liability may arise against a municipality

for "constitutional deprivations visited pursuant to governmental 'custom' even though such a

custom has not received formal approval through the body's official decisionmaking channels."
*Id.* at 690-91.  On the other hand, "a municipality cannot be held liable *solely* because it employs a
tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat
superior* theory."  *Id.* at 691 (emphasis in original).

"A plaintiff suing a municipality under section 1983 for the acts of one of its employees
must prove: (1) that a municipal employee committed a constitutional violation, and (2) that a
municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v.
Oklahoma County Bd. of County Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998).  Because
Defendants are entitled to summary judgment on Plaintiffs' § 1983 claims, Plaintiffs' failure to
train claim cannot survive.  *See Wilson v. Meeks*, 98 F.3d 1247, 1255 (10th Cir. 1996); *Hinton v.
City of Elwood, Kansas*, 997 F.2d 774, 782 (10th Cir. 1993) ("A municipality may not be held
liable where there was no underlying constitutional violation by any of its officers.").  Defendants'
motion to dismiss the failure to train claim is thereby granted.

## III.    **Plaintiffs' State Law Claims**

Plaintiffs also raise two pendant state law claims:  (1) breach of contract against the City
of Rio Rancho; and (2) bad faith breach of the covenant of good faith and fair dealing against the
City of Rio Rancho.[15]  Because the Court is granting summary judgment on Plaintiffs' federal
claims, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims.
*See City of Enid*, 149 F.3d at 1156 ("When all federal claims have been dismissed, the court may,
and usually should, decline to exercise jurisdiction over any remaining state claims.").

---

[15] As explained, *supra*, the Court does not consider Plaintiffs' September 9, 2005 fraud and
fraudulent inducement claim to be a separate claim.

**IV.     Conclusion**

For the reasons stated above, there are no genuine disputes over material facts and Defendants are entitled to judgment as a matter of law on Plaintiffs' constitutional claims.  The Court declines to exercise jurisdiction over Plaintiffs' state law claims.

**IT IS THEREFORE ORDERED** that Defendants' *Motion to Dismiss Plaintiffs' Amended Complaint* **[Doc. No. 76]**, filed February 22, 2005, is hereby **GRANTED**.  Judgment will be entered in favor of Defendants.

Dated this 28th day of September, 2005.

_____
MARTHA VÁZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE

<u>Attorney for Plaintiffs</u>:
Peter Everett IV

<u>Attorney for Defendants</u>:
Randy Bartell